UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEFF HERBERT,                                    Case No. 1:23-cv-633
          Plaintiff,                             Hopkins, J.
                                                 Litkovitz, M.J.


     vs.


KC ROBOTICS, INC.,                               **ORDER AND REPORT AND**
          Defendant.                             **RECOMMENDATION**


        Plaintiff Jeff Herbert brings this employment discrimination action alleging various forms

of discrimination and retaliation by his former employer, defendant KC Robotics, Inc. (KCR).

This matter is before the Court on defendant's motion to dismiss the complaint (Doc. 11),

plaintiff's response in opposition (Doc. 15), and defendant's reply (Doc. 16). Defendant also

moved to strike plaintiff's opposition. (Doc. 17).

**I.      Motion to Strike (Doc. 17)**

        Plaintiff attached several exhibits to his response in opposition. (Doc. 15 at PAGEID

146-71). KCR argues that they should be stricken pursuant to Rule 12(f) of the Federal Rules of

Civil Procedure. In particular, KCR objects to plaintiff's proffer of settlement communications

and KCR's business records. (Doc. 15 at PAGIED 156-64, 169). If the Court declines to strike

these particular documents, KCR requests that they be sealed. Plaintiff did not respond to this

motion.

        The Court has "complete discretion to determine whether or not to accept the submission

of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion

and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Schnatter*

*v. 247 Grp., LLC*, No. 3:20-cv-00003, 2021 WL 5502780, at *2 (W.D. Ky. Nov. 23, 2021)

(quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. April 2021 Update) (collecting cases)). It should decide based on "whether the matters offered and the additional procedures required by Rule 56 will facilitate disposition of the action or alternatively whether the court can base its decision upon the face of the pleadings." *Id.* (citing WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366).

The Court declines to consider the materials attached to plaintiff's response in opposition and convert KCR's motion to dismiss into a motion for summary judgment because it can decide the motion on the face of the pleadings. As such, the Court denies KCR's motion (Doc. 17) as moot.

For the Court to seal particular documents on the public record, KCR must file a motion and satisfy the heavy burden established in *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299 (6th Cir. 2016). To justify sealing records, a proponent must demonstrate: "(1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp.*, 825 F.3d at 305). The proponent must also "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Shane Grp.*, 825 F.3d at 305-06 (quoting *Baxter Intern., Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th Cir. 2002)). While KCR's motion explained its justification for striking these documents, it must articulate reasons and authority for sealing them as set forth above if KCR wishes these documents to be sealed.

## II.    Background[1]

Plaintiff suffers from hearing loss.  (Doc. 1 at PAGEID 3, ¶ 18).  In November 2019, KCR hired plaintiff, then age 42, as a Controls Engineer.  (*Id.*, ¶¶ 16-17, 25).  In December 2019, KCR hired Austin LNU and Lon Hambrice, both of whom were under forty and not disabled.  (*Id.* at PAGEID 3-4, ¶¶ 28-30, 32-34).  Shortly after their hiring, plaintiff's work was reassigned to Lon Hambrice.  (*Id.* at PAGEID 4, ¶ 35).

In March 2020, plaintiff was assigned to a "disaster job," which he completed according to KCR's standards.  (*Id.*, ¶¶ 36, 39).  In late 2020 and early 2021, plaintiff trained and directed a new non-disabled employee, Chad Perry.  (*Id.* at PAGEID 4-5, ¶¶ 45-49).  During this time, plaintiff drafted an electrical system for a project that KCR ultimately reassigned to Perry.  (*Id.*).  The reassignment of plaintiff's work to another much younger and less experienced employee happened again during his tenure with KCR.  (*Id.* at PAGEID 7, ¶¶ 95-96).

In October 2021, plaintiff applied for two open Senior Controls Engineers positions.  (*Id.* at PAGEID 5, ¶¶ 54-55).  KCR promoted Perry and Austin LNU, both of whom were not disabled, had less experience, and had less tenure with KCR than plaintiff; Austin LNU is also substantially younger than plaintiff.  (*Id.*, ¶¶ 56-65).  Around this time, plaintiff was assigned to work with and train another inexperienced and substantially younger employee, Ben LNU.  (*Id.* at PAGEID 6, ¶¶ 75-77).

Throughout his tenure at KCR, plaintiff completed difficult assignments and assumed responsibilities without receiving credit.  (*Id.* at PAGEID 4-6, ¶¶ 39, 51, 71, 74, 82).  Plaintiff's

---

[1] The following is derived from plaintiff's complaint (Doc. 1) and EEOC charge (Doc. 11-1), which is attached to defendant's motion to dismiss, referenced in plaintiff's complaint, and central to plaintiff's claims.  (*See* Doc. 1 at PAGEID 2, ¶¶ 8-9).  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, . . . and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

manager, Matthew LNU, treated him more harshly than "similarly situated younger and/or not disabled employees." (*Id.* at PAGEID 6-7, ¶¶ 83-89). For example, KCR allowed Ben LNU to manipulate a robot that plaintiff was prohibited from manipulating. (*Id.* at PAGEID 8, ¶¶ 109-112).

Around March 2022, plaintiff requested an accommodation—having his work instructions typed or written—that KCR refused. (*Id.* at PAGEID 9, ¶¶ 113-14). Around May 2022, plaintiff had a performance review with his manager Matthew LNU. (*Id.*, ¶¶ 118). At the meeting, Matthew LNU "referred to [plaintiff]'s genitals when he talked about [plaintiff]'s personnel file" and "told [plaintiff] he often hired escorts, and how [plaintiff] should go to bars to find women." (*Id.*, ¶¶ 119-20). In June 2022, plaintiff emailed KCR's owners requesting a meeting about Matthew LNU's inappropriate comments. (*Id.*, ¶¶ 121-22). No meeting took place at that time. (*Id.*, ¶ 123). Plaintiff alleges he again requested the accommodation in June 2022, which KCR refused. (*Id.*, ¶¶ 124-25).

Around July 2022, plaintiff sent KCR's owners "another email request," which arguably reiterated his request for an accommodation and also complained about Matthew LNU's inappropriate comments. (*Id.* at PAGEID 10, ¶ 128). This prompted a meeting with human resources and one of KCR's owners, Kyle Carrier. (*Id.*, ¶¶ 129-30). At this meeting, Carrier primarily discussed Matthew LNU's inappropriate comments and not plaintiff's unfair performance review. (*Id.*, ¶ 130). Carrier offered plaintiff one month of severance if he would leave but ultimately terminated plaintiff the next day (July 18, 2022) without any investigation. (*Id.*, ¶¶ 131-34, 138). KCR has a progressive discipline policy that provides for a verbal warning, written warning, final written warning, suspension, and written communication related to the stated basis for termination. (*Id.* at PAGEID 11 ¶¶ 140-147). KCR did not use this policy

when it terminated plaintiff.  (*Id.* at PAGEID 12, ¶¶ 159, 163, and 169).  KCR's stated basis for plaintiff's termination was that plaintiff "did not meet position requirements and falsely accused a coworker of sexual harassment[.]"  (*Id.* at PAGEID 10, ¶ 139).

Plaintiff filed a charge of discrimination with the EEOC and the Ohio Civil Rights Commission on August 19, 2022.  (*Id.* at PAGEID 2, ¶¶ 8-9; Doc. 11-1).  Plaintiff filed the instant complaint within 90 days of receipt of a Right to Sue letter dated July 6, 2023.  (Doc. 1 at PAGEID 2, ¶¶ 10-12; Doc. 1-1).  Plaintiff's complaint contains the following claims: age discrimination under Ohio Revised Code § 4112.01 *et seq.* (Count I); age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq.* (Count II); disability discrimination under Ohio Revised Code § 4112.01 *et seq.* (Count III); disability discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. § 12101 *et seq.* (Count IV); failure to accommodate disability in violation of Ohio Revised Code § 4112.01 *et seq.* (Count V); failure to accommodate disability in violation of the ADA (Count VI); failure to promote based on age discrimination in violation of Ohio Revised Code § 4112 *et seq.* (Count VII); failure to promote in violation of the ADEA (Count VIII); failure to promote based on disability discrimination in violation of Ohio Revised Code § 4112 *et seq.* (Count IX); failure to promote in violation of the ADA (Count X); sexual harassment in violation of Ohio Revised Code § 4112 *et seq.* (Count XI); sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Count XII); retaliation in violation of Ohio Revised Code § 4112.01 *et seq.* (Count XIII); retaliation in violation of Title VII (Count XIV); retaliation in violation of the ADA (Count XV); and retaliation in violation of the ADEA (Count XVI).

### III. Legal standard

To withstand a motion to dismiss, a complaint must comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Rule 8(a)). A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106). The Sixth Circuit has also recognized, however, that this liberal construction does not come at the expense of "abrogat[ing] basic pleading essentials in pro se suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted).

### IV. Analysis

KCR moves to dismiss all of plaintiff's claims against it. With respect to plaintiff's sexual harassment claims, KCR argues that plaintiff failed to exhaust his administrative remedies and, in any event, has not plausibly alleged a hostile work environment claim. KCR argues that

plaintiff has failed to plausibly state his age and disability discrimination claims or related failure to promote claims. KCR argues that plaintiff's failure to accommodate claims must fail because he concedes that he could perform the essential functions of his position without accommodation. Finally, KCR argues that all of plaintiff's retaliation claims must fail because he did not exhaust his administrative remedies and, in any event, has not plausibly alleged retaliation claims.

    A. <u>Hostile work environment (Counts XI and XII)</u>

KCR argues that plaintiff did not check the "sex" box on his EEOC charge and summarized the basis for his charge without reference to his sex. (*See* Doc. 11-1 (EEOC charge and Notice of Claims) at PAGEID 73). In addition, KCR argues that the reference to a single incident of alleged sexual harassment in the Notice of Claims (*see id.* at PAGEID 78) does not suffice to exhaust the claims. Even if the Court were to find that plaintiff exhausted these claims, however, KCR argues that the claims should still be dismissed. Other than boilerplate language, plaintiff's complaint alleges only one instance of inappropriate comments by Matthew LNU. KCR argues that even if this allegation were taken as true, it does not support a sexual harassment claim based on a hostile work environment as a matter of law.

In response, plaintiff largely reiterates the allegations of his complaint and expresses his belief that his performance review and complaint about Matthew LNU's inappropriate comments were both handled improperly. In reply, KCR notes that plaintiff does not challenge its exhaustion argument.

To file a federal Title VII claim, a plaintiff must first exhaust administrative remedies by "fil[ing] a charge of discrimination with the EEOC that includes all claims the employee intends to bring in district court." *Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 236 (6th

Cir. 2017) (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)).[2] "Only claims that are included in the charge or are 'reasonably related to or grow out of the factual allegations in the EEOC charge' may be heard in federal court." *Id.* (quoting *Younis*, 610 F.3d at 361-62).

KCR relies heavily for its exhaustion argument on *Younis*. In *Younis*, the pro se plaintiff's EEOC complaint alleged only religion and national original discrimination. *Younis*, 610 F.3d at 360. In his federal case, the plaintiff alleged a hostile work environment claim. *Id.* The Sixth Circuit held that the plaintiff did not exhaust his hostile work environment claim because his charge did not allege it and cited only three or four isolated comments over a three-year period. *Id.* at 362. Here, however, while the "sex" box is not checked on plaintiff's charge, his attached Notice of Claims includes a section titled "Sexual Harassment Claims." (Doc. 11-1 at PAGEID 78). In *Younis*, the substance of the underlying hostile-work-environment-related allegations (i.e., only a few isolated incidents) was only relevant to the court's determination of whether the charged party should have been on notice of such a claim. The circumstances at bar are distinguishable—the Notice of Claims attached the plaintiff's charge shows his clear intent to bring hostile work environment claims.

The Court need not decide the exhaustion question, however, because plaintiff's hostile work environment claims do not meet the plausibility threshold under Rule 12(b)(6). Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national

---

[2] "Exhausting administrative remedies is" also "a condition precedent to filing a suit in federal court for ADA and ADEA claims." *Collins v. Ohio Dep't of Job & Fam. Servs.*, No. C2-05-461, 2007 WL 2783661, at *15 (S.D. Ohio Sept. 24, 2007) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (ADA); *Howelett v. Holiday Inns*, 49 F.3d 189, 194 (6th Cir. 1995) (ADEA)) (footnote omitted).

origin[.]" 42 U.S.C. § 2000e–2(a)(1).[3] Title VII protects employees from discriminatory hostile or abusive work environments. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). Sexual harassment that results in a "hostile work environment" is a type of discrimination "based on sex" that is protected under Title VII, even without a tangible employment action. *Meritor*, 477 U.S. at 64, 66. The protection against hostile work environments applies to both female and male employees. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998). To prove a hostile work environment claim, plaintiff must show that: "(1) []he was a member of the protected class; (2) []he was subjected to unwelcome harassment, based on sex; (3) the harassment had the effect of unreasonably interfering with h[is] work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (citing *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)).

For purposes of the third factor, the conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.* (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)). In determining whether a work environment is objectively hostile or abusive, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris*,

---

[3] "[S]exual harassment claims under Ohio Revised Code § 4112 are generally governed by the same standards as sexual harassment claims under Title VII[.]" *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009) (citing *Hampel v. Food Ingredients Specialties, Inc.*, 729 N.E.2d 726, 731 (Ohio 2000), and *Greenwood v. Delphi Auto. Sys.*, 103 F. App'x 609, 612 n.1 (6th Cir. 2004)).

510 U.S. at 23). Conduct that is "merely offensive" is insufficient to support a hostile work environment claim. *Harris*, 510 U.S. at 21. "[C]omments and harassing acts of a 'continual nature' are more likely to be deemed pervasive." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (quoting *Abeita v. Transam. Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)). Furthermore, "courts must determine whether the 'workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Grace*, 521 F.3d at 678-79 (quoting *Harris*, 510 U.S. at 21 (internal quotation marks omitted)).

At the pleading stage, however, a plaintiff who asserts a federal employment discrimination claim is not required to plead facts establishing a prima facie case in order to state a claim for relief. *Keys*, 684 F.3d at 609 ("[I]t was error for the district court to require Keys to plead a prima facie case under *McDonnell Douglas* [*v. Green*, 411 U.S. 792 (1973)][4] in order to survive a motion to dismiss."). *See also Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024) ("[A]t the motion-to-dismiss stage, a plaintiff is not required to plead facts establishing a prima facie case. . . ."). "The prima facie case . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002). A plaintiff "need allege only (a) the statutory basis for [the] claims, and (b) the factual predicate of those claims, such that the defendants are 'apprise[d] . . . of the [ ] claims and the grounds upon which they rest.'" *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 871 (S.D. Ohio 2013) (quoting *Lindsay v. Yates*, 498 F.3d 434, 440 (6th Cir. 2007)) (alterations in original). At the same time, plaintiff's complaint "must allege sufficient 'factual content' from

---

[4] The burden-shifting approach set forth in *McDonnell Douglas* applies to Title VII, ADEA, and ADA claims. *See Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004) (ADA) and *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (Title VII and ADEA).

which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that KCR discriminated against him because of his sex.  *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678, 679).

Accepting as true the allegations in plaintiff's complaint and EEOC charge, plaintiff fails to state a plausible claim of sex discrimination based on a hostile work environment under Ohio law or Title VII.  Beyond boilerplate language (*see* Doc. 1 at PAGEID 21-22, ¶¶ 281-84 and 289-292), the only concrete factual allegations describing anything relevant to this claim recount a single incident of inappropriate comments by plaintiff's manager Matthew LNU during his performance review.  (*Id.* at PAGEID 9, ¶¶ 119-20).[5]  This isolated, offensive conversation falls far short of the objectively severe or pervasive conduct needed to state a claim for relief for a sexually hostile work environment as a matter of law.  Plaintiff has failed to allege facts giving rise to a reasonable inference that KCR was a workplace "permeated with 'discriminatory intimidation, ridicule, and insult' that is sufficiently severe or pervasive so as to alter the conditions of [his] employment and create an abusive working environment."  *Harri*s, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 65).  There are no allegations (beyond the vague, boilerplate allegations referenced above) that Matthew LNU or any other KCS employee acted offensively toward plaintiff—let alone physically threatened or humiliated him—on any other occasion.  *See Faragher*, 524 U.S. at 787-88.  Finally, plaintiff has alleged no facts indicating that this one instance of alleged harassment interfered with his work performance.  *See id.* at 788.  To the contrary, plaintiff's complaint maintains that he remained a "great Controls Engineer" until the time of his termination.  (Doc. 1 at PAGEID 10, ¶ 137).  Counts XI and XII of plaintiff's complaint should be dismissed.

---

[5] Plaintiff's Notice of Claims likewise refers only to this single incident.  (*See* Doc. 11-1 at PAGEID 78).

B.  <u>Disability discrimination (Counts III, IV, IX, and X)</u>

KCR argues that these claims must fail because plaintiff has not alleged that his disability was the "but for" cause of his termination or his failure to be promoted; instead, plaintiff rests his claims on conclusory allegations without factual support.  In his response, plaintiff argues that he has proof of his disability and seems to suggest that his disability is the only reason KCR possibly could have had for his termination.  (Doc. 15 at PAGEID 144 ("What other conclusion can be made from falsifying a performance report than [KCR] attempting to terminate him on false pretenses.")).

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).[6]  "A prima facie case of disability discrimination under the ADA requires that a plaintiff show: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced."  *Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 324 (6th Cir. 2018) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)) (internal quotation marks omitted).  "The fifth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably."  *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999) (citation omitted).  As discussed above, at the pleading stage, plaintiff is not required to plead facts establishing a prima facie case in order to

---

[6] "The Ohio anti-discrimination law mirrors the ADA, so this Court applies the legal standard under the ADA to claims brought under both laws."  *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022).

state a claim for relief, *Keys*, 684 F.3d at 609, and need only allege the statutory and factual bases for the claim to apprise KCR of such claims. *Witte v. Rippe & Kingston Sys.*, 358 F. Supp. 2d 658, 668 (S.D. Ohio 2005).

Plaintiff's complaint plausibly alleges disability discrimination claims based on his termination. Liberally construed, plaintiff's complaint alleges that he made three requests for a reasonable accommodation prior to his termination. (Doc. 1 at PAGEID 9-10, ¶¶ 113 (March 2022), 124 (June 2022), and 128 (July 2022)). Plaintiff had a meeting with human resources in July 2022 to discuss—among other things—that request, and KCR terminated plaintiff the very next day. (*Id.* at PAGEID 10, ¶¶ 128-29, 138). Plaintiff alleges that KCR used a progressive discipline policy with non-disabled employees prior to termination but not with plaintiff. (*Id.* at PAGEID 11, ¶¶ 140, 142-47). Together, these allegations permit the Court to reasonably infer that KCR terminated plaintiff based on his disability at this stage of the proceedings.

As for his failure to be promoted, plaintiff alleges that the two employees promoted over him were "not disabled." (*Id.* at PAGEID 5, ¶¶ 57, 61). But the complaint gives no indication that KCR knew plaintiff was disabled at the time the promotion decisions were made. (*Id.* at PAGEID 5, 8-10, ¶ 54 (new positions offered in October 2021); ¶¶ 113, 124, and 128 (plaintiff requested accommodation in March, June, and July 2022)). Even short of explicit communication by plaintiff to KCR regarding his disability, plaintiff does not allege anything allowing the Court to infer that KCR was aware of his disability prior to his failure to be promoted.[7] As such, the Court finds that there is insufficient factual content to warrant a reasonable inference that plaintiff was not promoted because of his disability.

---

[7] Plaintiff alleges that his manager, Leo Lisk, "implied that he was a drug addict[,]" which he characterizes as "Disability Harassment[.]" (Doc. 1 at PAGEID 4, ¶ 41). But the Court need not credit this legal conclusion, and it appears untethered to the disability discrimination plaintiff alleges related to his hearing loss and which forms the basis of his disability discrimination claims.

For the foregoing reasons, KCR's motion should be denied as to Counts III and IV and granted as to Counts IX and X of plaintiff's complaint.

C. Age discrimination (Counts I, II, VII, and VIII)

KCR argues that plaintiff's age discrimination claims should also be dismissed because he fails to plausibly allege them. KCR highlights the fact that plaintiff's complaint alleges that he was 42 at the time of the events at issue and passed over in favor of "substantially younger" employees but offers no factual content demonstrating these employees' actual or approximate ages. (*See, e.g.*, Doc. 1 at PAGEID 5, ¶ 62). KCR argues that this level of detail has been held by the Sixth Circuit to be insufficient to state an age discrimination claim as a matter of law. Plaintiff does not respond to this critique other than to proffer evidence of the other employees' ages, which, as noted above, the Court will not consider for purposes of KCR's motion to dismiss. *See supra* p. 2.

The ADEA makes it unlawful to "discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[8] A prima facie case under the ADEA requires a plaintiff to show that "(1) []he was over 40 years old; (2) []he suffered an adverse employment action; (3) []he was qualified for the position []he held; and (4) []he was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (quoting *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015)). At the pleading stage, plaintiff is not required to establish a prima facie case of age discrimination, but need only

---

[8] "Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998))

plead the statutory and factual bases to plausibly state a claim for age discrimination.
*Swierkiewicz*, 534 U.S. at 511-12.

Plaintiff has plausibly alleged age discrimination at this stage of the proceedings.  It is reasonable to infer that KCR knew or could have readily discerned his age (as opposed to his disability status) relative to other employees when it took *both* of the alleged adverse employment actions.  Plaintiff also points to specific instances of disparate treatment by KCR of individuals outside the protected class: Austin LNU's promotion and the fact that plaintiff was replaced by a significantly younger person after his termination.  (Doc. 1 at PAGEID 5, 14; ¶ 60, 62, and 191).  Because the Court can reasonably infer that KCR knew plaintiff's relative age throughout his employment, the Court may also reasonably infer that plaintiff's more general allegations regarding a pattern of disparate treatment compared to other, younger employees also suggest that he was not promoted and ultimately terminated because of his age.  (*See generally* Doc. 1 at PAGEID 3-8 (e.g., plaintiff was assigned the most difficult, unwanted jobs and while younger employees were working with robots and was often assigned to complex projects while being required to train younger, inexperienced employees—only to have those younger employees receive better treatment)).  The Court therefore finds that these allegations state a plausible claim for age discrimination.

The fact that plaintiff has not alleged the approximate ages of the "substantially younger" employees does not change the Court's conclusion.  KCR relies on *House*, 630 F. App'x 461, for its position that such allegations are required, but the Court is not persuaded.  In *House*, the Sixth Circuit granted an employer's motion to dismiss *in part* because the plaintiff/employee had failed to provide the "names, relative ages, or qualifications of the 'substantially-younger' employees who allegedly assumed his job duties."  *Id.* at 464.  But this was only one of many

gaps in that plaintiff's complaint that led to dismissal. The *House* plaintiff alleged no facts to as to why the adverse employment action in his case was not warranted, no facts as to how substantially younger employees were treated more favorably, and no facts regarding how the employees were similarly situated. *Id.* The court also remarked that the plaintiff's complaint conceded a non-discriminatory reason for his termination and established that the employer had incurred significant expense in hiring and relocating the plaintiff at age 48. *Id.* n.3.

The age discrimination allegations in the instant complaint state more than the "bare assertions" of age discrimination at issue in *House*. *Id.* at 463. The complaint here alleges that Austin LNU, a substantially younger person, was promoted over plaintiff; and plaintiff was replaced by a significantly younger person after his termination. (Doc. 1 at PAGEID 5, 14; ¶ 60, 62, and 191). It is reasonable to infer that KCR knew plaintiff's age when it took these actions, among the other instances of worse treatment compared to other employees that are described in plaintiff's complaint. (*See generally* Doc. 1 at PAGEID 3-8).

KCR also relies on *Grosjean*, 349 F.3d 332, in which the Sixth Circuit held that an age difference of six years or less was not significant as a matter of law for purposes of the prima facie age discrimination case. *Id.* at 340.[9] This rule is drawn from a distinction between age discrimination and other types of discrimination:

> In the age-discrimination context, [an inference of illegal age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.

*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). *Grosjean* and the other cases cited by KCR, however, were in the summary judgment posture. While plaintiff may

---

[9] This threshold applies in indirect evidence cases such as this one, but not direct evidence cases. *Id.*

ultimately fail to produce evidence demonstrating a legally significant age difference between plaintiff and other KCR employees, his failure to specifically plead that fact should not defeat his age discrimination claims as a matter of law.

    D.   <u>Failure to accommodate (Counts V and VI)</u>

For a failure to accommodate claim, a plaintiff must show:

> (1) []he was disabled within the meaning of the [the statute], (2) []he was otherwise qualified for h[is] position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about h[is] disability; (4) []he requested an accommodation; and (5) the defendant failed to provide the necessary accommodation.

*King*, 30 F.4th 551, 560 (6th Cir. 2022) (quoting *Kirilenko-Ison v. Bd. of Edu. of Danville Indep. Schs.*, 974 F.3d 652 669 (6th Cir. 2020)) (second alteration in original).

    KCR argues that these claims fail as a matter of law because plaintiff admits that he did not need an accommodation to perform the essential functions of his job. KCR asserts that under the ADA regulations, a "reasonable accommodation" includes "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, **that enable a qualified individual with a disability to perform the essential functions of that position**; [ ]." (Doc. 11 at PAGEID 65, citing 29 C.F.R. § 1630.2(o)(1)(ii)) (emphasis added by KCR). KCR relies on a Seventh Circuit decision analyzing the second element of an accommodation claim and holding that "the ADA does not require an employer to accommodate disabilities that have no bearing on an employee's ability to perform the essential functions of h[is] job." *Brumfield v. City of Chicago*, 735 F.3d 619, 633 (7th Cir. 2013). KCR contends that plaintiff alleges that "[d]espite [his disability,]" he "was still able to perform the essential functions of his job." (Doc. 1 at PAGEID 3, ¶ 24). Therefore, according to KCR, plaintiff "cannot establish a claim for failure to accommodate because he has

not alleged that he cannot perform the essential functions of the job without the requested accommodation."  (Doc. 23 at PAGEID 65).

There are two problems with KCR's argument.  First, the Seventh Circuit appears to have limited the scope of its *Brumfield* decision.  *See Equal Emp. Opportunity Comm'n v. Charter Commc'ns, LLC*, 75 F.4th 729 (7th Cir. 2023).  In explaining its previous decision in *Brumfield*, the Seventh Circuit stated:

> The district court here understood *Brumfield* to hold that the ADA requires no accommodation if the employee's disability does not affect his ability to perform essential job functions once the employee is at work.  We do not read *Brumfield* so broadly. . . .  Our opinion in *Brumfield* should not be read as holding that the ADA imposes no duty to offer reasonable accommodations that affect safety or pain that an employee may be motivated to overcome.

*Id*. at 739.

Though denying plaintiff's requested accommodation may not have impacted his safety or pain, there is a second problem with KCR's argument.  KCR's citation to the ADA's "reasonable accommodation" regulation is incomplete.  A "reasonable accommodation" is defined as:

> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or
>
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or
>
> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(o)(1).  KCR cites the second definition only in support of its argument, while ignoring the third, which arguably applies here.  Relying explicitly on the third definition, the

Sixth Circuit has rejected the argument that an employee who has the physical capacity to perform his job means the employer has no obligation to provide an accommodation. In *Gleed v. AT&T Mobility Servs.*, LLC, 613 F. App'x 535 (6th Cir. 2015), the plaintiff alleged that AT&T violated the ADA when it refused to allow him to use a chair to accommodate a leg condition. In addressing an argument similar to the one made by KCR here, the Court of Appeals stated:

> AT&T offers none of the arguments one typically sees in ADA cases. AT&T does not contend that prolonged standing was an essential part of Gleed's job; it does not contend that allowing him to sit would have imposed an undue hardship on AT&T; and it admits that it allowed Gleed's pregnant coworker to have a chair, which suggests that AT&T could have provided one to him. Instead, AT&T insists that if Gleed was physically capable of doing his job—no matter the pain or risk to his health—then it had no obligation to provide him with any accommodation, reasonable or not. In support, AT&T cites our decisions in *Gaines v. Runyon*, 107 F.3d 1171 (6th Cir. 1997), and *Landefeld v. Marion General Hospital*, 994 F.2d 1178 (6th Cir. 1993). Both of those cases arose under the Rehabilitation Act, however; and the ADA sometimes "raises the employer's standard of care" beyond that required by the Rehabilitation Act. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 316 (6th Cir. 2012) (en banc) (emphasis omitted). Moreover, the ADA's implementing regulations require employers to provide reasonable accommodations not only to enable an employee to perform his job, but also to allow the employee to "enjoy equal benefits and privileges of employment as are enjoyed by . . . similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii).

*Id.* at 538-39.

In this case, plaintiff alleges he requested an accommodation for his hearing impairment—that his instructions be typed or written to help him better understand the directions—which KCR denied. (Doc. 1 at PAGEID 9, ¶ 113). The fact that plaintiff had been able to perform the essential functions of his job without an accommodation does not necessarily mean plaintiff was not entitled to a reasonable accommodation to "enjoy equal benefits and privileges of employment as are enjoyed by . . . similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii). The Court determines that the defense raised by

19

KCR is not well-taken and does not defeat plaintiff's failure to accommodate claim in this case.[10]

Therefore, KCR's motion to dismiss should be denied as to plaintiff's failure to accommodate

claims (Counts V and VI).

    E. <u>Retaliation claims (Counts VIII, XIV, XV, and XVI)</u>[11]

    KCR argues that plaintiff's retaliation claims should be dismissed because he did not

exhaust them. KCR also argues that plaintiff did not engage in protected activity under the

ADA, ADEA, Title VII, or Ohio law; and plaintiff did not allege a causal connection between his

protected activity and his termination. In response, plaintiff does not address the exhaustion

argument and implies that his protected activity included filing a similar complaint against his

prior employer, of which KCR had knowledge. In reply, KCR emphasizes that this latter

argument was not presented in plaintiff's EEOC charge.

    As discussed above, plaintiff was required to exhaust his retaliation claims. *Russ*, 720 F.

App'x at 236. Plaintiff checked the "retaliation" box on his EEOC charge (Doc. 11-1 at

PAGEID 73), and his attached Notice of Claims describes two protected activities. First, it

states: "Around July 2022, [plaintiff] sent out another email requesting an appeal for his review

_____

[10] The Eighth Circuit has also rejected the argument "that the ADA 'requires employers to provide reasonable accommodations only when necessary to enable employees to perform the essential functions of their jobs.'" *Hopman v. Union Pac. R.R.*, 68 F.4th 394, 402 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 1003 (2024). The *Hopman* court recognized the "conflicting views, or at least contrary reasoning, among the many circuit opinions addressing this issue," but stated "it is often possible to reconcile apparent circuit conflicts by careful attention to distinguishing facts and contexts in the various cases." *Id.* at 401 n.4 (comparing *Burnett v. Ocean Props., Ltd.*, 987 F.3d 57, 68-69 (1st Cir. 2021), *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 239 (D.C. Cir. 2018), *Gleed*, 613 F. App'x at 538-39, and *Feist v. Louisiana, Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 453 (5th Cir. 2013), with *Brumfield*, 735 F.3d at 633, and *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007)).

[11] The Court analyzes all of plaintiff's retaliation claims using the same framework. *See Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 511 (6th Cir. 2016) ("Both Title VII and Ohio Rev. Code § 4112.02(I) contain a so-called opposition clause, under which employers may not retaliate against any employee that 'opposed' an unlawful practice.") (citing Ohio Rev. Code Ann. § 4112.02(I); 42 U.S.C. § 2000e-3(a)); *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997) ("Retaliation claims are treated the same whether brought under the ADA or Title VII.") (citation omitted); *Imwalle*, 515 F.3d at 544 ("[W]e examine Title VII, ADEA, and Ohio state-law retaliation claims under the same *McDonnell Douglas/Burdine* evidentiary framework that is used to assess claims of discrimination.") (citation omitted).

and mentioning Matthew LNU's sexual harassment.  This was a protected complaint."  (*Id.* at

PAGEID 77).  Second, it describes his request for accomodation for his hearing disability and

states that he "made constant protected complaints of disability discrimination to his supervisors.

. . ."  (*Id.* at PAGEID 79).

The Notice of Claims describes no retaliation related to alleged age discrimination, and

this claim (Count XVI) should be dismissed as not properly exhausted.[12]  KCR argues, however,

that *none* of plaintiff's retaliation claims were properly exhausted.  KCR argues that plaintiff

raised retaliation with respect to the single, inappropriate conversation with Matthew LNU,

which "does not amount to a claim of retaliation based on reporting sexual harassment."  (Doc.

11 at PAGEID 67).  In addition to raising this conversation, however, the Notice of Claims

clearly references retaliation related to disability discrimination (*see* Doc. 11-1 at PAGEID 79)

that KCR fails to acknowledge.  As such, the Court is not persuaded that plaintiff did not exhaust

his retaliation claim related to disability discrimination.

This leaves plaintiff's retaliation claims related to his report regarding Matthew LNU's

comments.  KCR seems to argue that the Court should find that this retaliation claim was not

properly exhausted because the underlying retaliation/sexual harassment claims are not plausible.

KCR cites no authority for such an approach, and such an approach appears inconsistent with the

"liberal construction [an EEOC charge] is due,"  *Kilpatrick v. HCA Hum. Res., LLC*, 838 F.

App'x 142, 146 (6th Cir. 2020).  The Court therefore declines follow it and finds that Counts

XIII, XIV, and XV were properly exhausted.

Even if they were properly exhausted, KCR maintains that plaintiff's retaliation claims

---

[12] In addition, to the extent plaintiff's response alleges that he was retaliated against for protected activity in the form of a prior EEOC charge, this is not described at all in plaintiff's complaint.  As such, the Court does not recognize any such claim.

based on his complaints about sex and disability discrimination should be dismissed. KCR

argues that the only factual allegations in plaintiff's complaint regarding retaliation concern his

sex discrimination claim, and those allegations do not constitute the protected activity necessary

to sustain a retaliation claim. In response, plaintiff argues that he emailed KCR staff "on

discrimination"—showing that he "clearly exhausted his administrative remedies. . . ." (Doc. 15

at PAGEID 145).[13]

The Court starts with plaintiff's retaliation claims based on a sexually hostile work

environment. The anti-retaliation provisions in Title VII and the ADA are broader than their

antidiscrimination provisions and "protect[] employees from conduct that would have 'dissuaded

a reasonable worker from making or supporting a charge of discrimination.'" *Niswander v.

Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (quoting *Burlington Northern & Santa Fe

Railway Co. v. White*, 548 U.S. 53, 68 (2006)). "Title VII's antiretaliation provision forbids

employer actions that 'discriminate against' an employee (or job applicant) because he has

'opposed' a practice that Title VII forbids. . . ." *White*, 548 U.S. at 59 (quoting 42 U.S.C. §

2000e-3(a)). Complaints of a sexually hostile work environment may constitute protected

conduct. *See* 42 U.S.C. § 2000e-2(a)(1), § 2000e-3(a). That said, "the alleged discriminatory

acts need not be actually illegal in order for the opposition clause to apply[,]" *Johnson v. Univ. of

Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000), and "an employee who opposes a hostile work

environment need not prove that the environment he complained of was actually hostile in order

for the employee to receive protection from retaliation under Title VII." *Yazdian v. ConMed

Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015).

Here, plaintiff alleges that at his May 2022 performance review, his manager "referred to

---

[13] Plaintiff cited various documents supporting this position that the Court does not consider, as explained above. *See supra* p. 2.

plaintiff's genitals" when speaking about his personnel file, told plaintiff in the meeting he

"often hired escorts," and advised plaintiff that he "should go to bars to find women." (Doc. 1 at

PAGEID 9, ¶¶ 119-120). Plaintiff emailed the owners of the company in June 2022 and

"requested a meeting to discuss the Sexual Harassment." (*Id.*, ¶ 122). The complaint alleges the

meeting did not occur, and in July 2022, plaintiff requested another meeting to discuss the sexual

harassment by his manager. (*Id.* at PAGEID 9-10, ¶¶ 123, 128). Plaintiff met with one of the

company's owners and human resources, and the following day his employment was terminated.

(*Id.* at PAGEID 10, ¶¶ 129-133). The complaint alleges KCR's stated basis for termination was

plaintiff did not "meet position requirements and falsely accused a coworker of sexual

harassment." (*Id.*, ¶ 139). Plaintiff states KCR never conducted an investigation into his

performance or complaints of sexual harassment in compliance with KCR's progressive

discipline policy before he was terminated. (*Id.* at PAGEID 10-11, ¶¶ 134, 140-147).

    Plaintiff's complaint contains sufficient factual content from which the Court can

reasonably infer that plaintiff was terminated in retaliation for complaining about his manager's

sexually harassing comments. *See Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL

3042844, at *5 (6th Cir. Aug. 2, 2022) (reversing Rule 12(b)(6) dismissal of a retaliation claim

where the plaintiff alleged that he was retaliated against in various ways after reporting that a co-

worker made him watch a pornographic video—the only inappropriate act directed primarily at

the plaintiff). Plaintiff's allegations of fact are "sufficiently severe that they 'might have

dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Bar*,

2022 WL 3042844, at *5 (quoting *Burlington Northern*, 548 U.S. at 68). Plaintiff's complaint

states a plausible complaint of retaliation based on sexual harassment.[14] KCR's motion to

---

[14] KCR argues that the single, inappropriate conversation between plaintiff and his manager does not constitute
protected activity as a matter of law. However, as discussed above, plaintiff need not show the environment was

dismiss should be denied as to plaintiff's retaliation claims related to sex discrimination (Counts XIII and XIV).

This leaves plaintiff's retaliation claims based on disability discrimination. Plaintiff's Notice of Claims references "constant protected complaints of disability discrimination" (*see* Doc. 11-1 at PAGEID 79), but the only allegation in plaintiff's complaint tied to protected activity related to the ADA are his requests for accommodation. Nevertheless, "[b]oth this circuit and most others agree that requests for accommodation are protected acts." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013). As discussed above, plaintiff's complaint alleges he was terminated the day after a meeting that was prompted by his follow-up email about his accommodation request. (Doc. 1 at PAGEID 10, ¶¶ 128-33). Given the temporal proximity between plaintiff's accommodation requests and his termination, plaintiff plausibly states a retaliation claim based on disability. KCR's motion to dismiss should be denied as to plaintiff's retaliation claims related to his disability (Counts XIII and XV).

For the foregoing reasons, the Court finds that KCR's motion to dismiss should be granted in part as to plaintiff's failure to promote claims based on disability discrimination (Counts IX and X), sexual harassment claims (Counts XI and XII), and retaliation claim related to age discrimination (Count XVI). KCR's motion to dismiss should be denied as to the

---

actually hostile as a matter of law to receive protection from retaliation under Title VII. *Yazdian*, 793 F.3d at 646. In addition, the cases cited by KCR are distinguishable. *See Arredondo v. Beer Barrel Inc.*, 645 F. Supp. 3d 739, 754 (N.D. Ohio 2022) (a vague, verbal comment that the plaintiff's co-worker's termination "wasn't fair" was not protected activity); *Soehner v. Time Warner Cable, Inc.*, No. 1:08-cv-166, 2009 WL 3855176, at *10 (S.D. Ohio Nov. 16, 2009) (plaintiff's comments to an investigator related to *another* employee's sexual harassment complaint could not have put the employer on notice that the plaintiff was engaging in protected activity). Plaintiff here alleges that he complained directly and explicitly to KCR's owners about being personally, sexually harassed by his supervising manager. Plaintiff alleges that he was fired almost immediately after a meeting with human resources and one of KCR's owners about the harassment—KCR dispensing in his case with use of its ordinary progressive discipline policy. The Court finds these circumstances sufficiently severe as to dissuade a reasonable employee from making a charge of discrimination regardless of the strength/success of the underlying sex discrimination claim.

remaining claims (Counts I-VIII and XIII-XV).

## IT IS THEREFORE ORDERED THAT:

1. KCR's motion to strike (Doc. 17) is **DENIED as moot**.

## IT IS THEREFORE RECOMMENDED THAT:

1. KCR's motion to dismiss (Doc. 11) be **GRANTED in part** and **DENIED in part** as
   follows:

   a. KCR's motion to dismiss should be **GRANTED** as to plaintiff's failure to
      promote claim based on disability discrimination under Ohio law (Count IX);
      failure to promote claim under the ADA (Count X); sexual harassment claim
      under Ohio law (Count XI); sexual harassment claim under Title VII (Count
      XII); and retaliation claim under the ADEA (Count XVI).

   b. KCR's motion to dismiss should be **DENIED** as to plaintiff's age
      discrimination claim under Ohio law (Count I); age discrimination claim
      under the ADEA (Count II); disability discrimination claim under Ohio law
      (Count III); disability discrimination claim under the ADA (Count IV); failure
      to accommodate disability claim under Ohio law (Count V); failure to
      accommodate disability claim under the ADA (Count VI); failure to promote
      claim based on age discrimination under Ohio law (Count VII); failure to
      promote claim under the ADEA (Count VIII); retaliation claims based on
      disability and sex discrimination under Ohio law (Count XIII); retaliation

claim under Title VII (Count XIV); and retaliation claim under the ADA (Count XV).

Karen L. Litkovitz
Chief United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEFF HERBERT,                                    Case No. 1:23-cv-633
        Plaintiff,                           Hopkins, J.
                                         Litkovitz, M.J.

        vs.

KC ROBOTICS, INC.,
        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof. This period may be extended further by the Court on timely motion by either side for an extension of time. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).